## Marshall v. Hollingsworth.

(Decided October 14, 1915.)

### Appeal from Lyon Circuit Court.

1. Guaranty—Guarantor of Commercial Paper Not Discharged by Failure of Holder to Give Notice of Dishonor.—A guarantor of a negotiable instrument becomes fixed with liability immediately upon default of the principal debtor; and failure upon the part of the holder to give notice of such default does not discharge the guaranty.

2. Bills and Notes—Discharge by Failure to Give Notice of Dishonor.—The unconditional guarantor of a negotiable instrument is not an indorser within the purview of Section 89 of the Negotiable Instruments Law (Ky. Stat., Sec. 3720b), and is not discharged by failure to give to him notice of the dishonor of the instrument.

3. Bills and Notes—Discharge of Party Secondarily Liable by Holder's Extension of Time to Debtor.—The extension of time which under Sub-section 6 of Section 120 of the Negotiable Instruments Law (Ky. Stat., Sec. 3720b) will discharge a party secondarily

liable on such instrument, must be a contract valid and complete in all its essentials; it must be for a definite time and based on a valid consideration. Mere indulgence is insufficient.

N. W. UTLEY and BERRY & GRASSHAM for appellant.

JOHN C. GATES for appellee.

OPINION OF THE COURT BY JUDGE HANNAH.—Affirming.

On December 22, 1910, E. D. Marshall sold and conveyed to Shirley Tisdale a tract of land in Lyon County. The consideration was $4,940.62, of which $500 was paid in cash upon the execution of the conveyance, and the remainder was evidenced by interest-bearing notes secured by lien retained on the land so conveyed, as follows: $500 due January 1, 1912; $985.15 due January 1, 1913, and a like amount due January 1, 1914; $985.16 due January 1, 1915, and a like amount due January 1, 1916. The deed contained a stipulation that default in the payment of the first note or in the payment of the interest on any of the notes, should precipitate the whole indebtedness and render it due and payable forthwith.

On March 24, 1911, Marshall sold the notes mentioned to J. W. Hollingsworth of Princeton in Caldwell County.

Shirley Tisdale died in June, 1912, without having paid the $500 note due January 1st of that year or either of the others. The administrator of his estate instituted a suit to settle the estate. Hollingsworth was made a defendant, and he filed the notes and asserted his lien on the land mentioned. Upon decretal sale the land brought $1,324.97 less than the principal and interest of the notes; and Hollingsworth thereupon brought this action against Marshall to recover the balance due on the notes, basing his right so to recover upon the ground that Marshall executed by endorsement upon the notes at the time of the transfer thereof to him, an unconditional guaranty thereof. The plaintiff having succeeded in the trial court, the defendant appeals.

1. The notes mentioned each bear this endorsement: "For value received, I hereby transfer and assign the within note to J. W. Hollingsworth; and guarantee the payment of same. March 24, 1911. (Signed) E. D. Marshall."

Appellant's first defense was that he merely endorsed the notes in blank at the time he sold them to Hollings-

worth, and that the guaranty was written above his signature thereafter, without his knowledge or consent; and he so testified; but the overwhelming weight of the evidence on this issue is to the contrary.

It is shown that appellee, Hollingsworth, lived in Caldwell County, while the land sold by appellant was in Lyon County; that appellee knew nothing about the land upon which the notes were a lien, or its value. Under these circumstances, it is quite improbable that the notes were purchased by him without a guaranty. But in addition to that, it is shown that the transfer of the notes was effected in the Farmers National Bank at Princeton, of which Hollingsworth was vice-president, and that the words of the guaranty were written upon the notes by the cashier of the bank before the name of Marshall was endorsed thereon; and this testimony is supported by that of the cashier and other attaches of the bank then present. The appellant is therefore liable as unconditional guarantor of the notes sold and transferred by him to appellee.

2.   But, he contends that as no notice of dishonor of the $500 note due January 1, 1912, was given to him, he was thereby released from liability on that note in virtue of the provisions of Section 89 of the Negotiable Instruments Law (Kentucky Statutes, Section 3720b), which is as follows:

"When a negotiable instrument has been dishonored, by non-acceptance of non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given, is discharged."

If appellant had been a mere indorser of the note in question, this contention would prevail; but he was not alone an indorser; he was also a guarantor, and as such, his guaranty being unconditional and absolute, he was fixed with liability immediately upon default of the principal debtor; and failure upon the part of the creditor to give notice to the guarantor of such default did not operate as a discharge. Levi v. Mendel, 1 Duvall 77.

3.   Section 120 of the Negotiable Instruments Law, provides that a person secondarily liable on the instrument is discharged (sub-section 6) by any agreement binding upon the holder, to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party second-

,arily liable, or unless the right of recourse against such party is expressly reserved in the original instrument. A guarantor is secondarily liable. Section 191, Negotiable Instruments Law. And as further defense appellant pleaded that when the $500 note matured, on January 1, 1912, appellee agreed with Tisdale that if he would pay the interest accrued and place improvements upon the land to that extent, an extension of time of payment of that note for one year would be granted; that this agreement was made without appellant's knowledge or assent; that appellee thereby waived the right to declare a precipitation of the whole indebtedness; and in effect extended the time of payment of all the notes, and thus released appellant from liability thereon.

Whether such an extension of time would have released the guarantor from liability on any note other than the $500 one, is a question we find it unnecessary to discuss; for appellant by his proof failed to sustain the allegations of his answer.

Such extension of time was sought to be proven by the testimony of a brother of Shirley Tisdale in regard to certain statements made to him by appellee. His testimony on this subject was as follows:

"Q. Did you ever have any talk with Mr. Hollingsworth about these notes that Shirley Tisdale died owing him; if so, when? A. Well, I don't know; the day of the sale—I don't remember what day it was—the day the place here was sold, we talked a little about the business here in Eddyville. He told me that by brother had paid the interest on the notes but had not paid any of the principal; that he came to him and told him he could pay the interest on the notes but couldn't pay the principal and have money to do what he wanted to do on the farm; that he would like to use the money on the place, what he had left, and that he told him it would be all right; and that he did pay him the interest. * * * I think that was all that was said about the notes anyway. Q. Did he say how much money your brother told him that he could pay or that he wanted to use in improving the land? A. Didn't specify the amount that I remember of at all that he wanted to use. Q. Did he tell you that he consented that your brother might do this? A. Yes, said to pay him the interest and he extended the time." This conversation is denied by Hollingsworth; but, conceding

that it was had, there is no showing of such an extension as would operate to release the guarantor.

"The extension of the time of payment given by the creditor to the principal, is an alteration of a very material part of the contract, and unless consented to by the surety (or guarantor) such extension or valid agreement for extension for a definite time, will operate to discharge him from liability for such payment." Elliott on Contracts, section 3968. But the extension must be based on a binding agreement, founded upon consideration, and for a definite time. 20 Cyc., 1472; 32 Cyc., 202. Mere indulgence by a creditor to the debtor, or even a promise by the creditor to extend the time of payment of the debt, will not operate to discharge the surety or guarantor; a contract valid and complete in all its essentials is requisite. Barber v. Ruggles, 87 S. W., 785, 27 R., 1077. It must be for a definite time and based on a valid consideration. Daviess County Bank & Trust Company v. Wright, 129 Ky., 21, 110 S. W., 361, 33 R., 457, 17 L. R. A. (N. S.), 1122.

Viewed in the light of these rules, the evidence for appellant fails to sustain his plea of discharge from liability in virtue of the alleged extension of time.

Judgment affirmed.