## Tichenor et al. v. Goff et al.

(Decided Jan. 17, 1936.)

(Rehearing Denied March 20, 1936.)

BARNES & SMITH for appellants.

DAVID C. BRODIE and A. D. KIRK, and KIRK & BARTLETT for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming in part and reversing in part.

This is an appeal from a judgment of the Ohio cir-

cuit court sitting in equity. On September 17, 1932, appellant Tracy Tichenor recovered a judgment for $5,207.50 against V. W. Goff and T. B. Mapels as a result of injuries received while working in a wagon mine operated jointly by Goff and Mapels. Goff owned a two-thirds interest in the mine, and his wife a one-third. Mapels had no property subject to execution, and we are concerned here with the efforts to collect the judgment from Goff alone. On September 24, 1932, within a week after the judgment was obtained, Goff executed and recorded a mortgage for $1,000 to his brother-in-law, William F. McKernon, on his two-thirds interest in a 38-acre tract of land, together with the coal mine and mining equipment thereon, and also his one-half interest in a 42½-acre tract. At the same time Goff executed a mortgage for $1,000 to his sister-in-law, Lee Tichenor Goff, covering his two-thirds interest in the 38-acre tract and the coal mine and mining equipment. On December 29, 1932, appellant Tracy Tichenor caused an execution to be issued on his judgment, and this execution was levied on the 38-acre tract, the 42½-acre tract, and also on a 3-acre tract belonging to Mapels. Mapels claimed, and was allowed, a homestead exemption in the 3-acre tract, and no complaint is made here of that allowance. On July 7, 1933, this suit was filed by Tracy Tichenor alone against Goff, Mapels, and their wives, and against the mortgagees, William F. McKernon and Lee Tichenor Goff, and against the G. & M. Coal Company, a dummy corporation then operating the mine under lease from Goff and Mapels, seeking to set aside as fraudulent the two mortgages to McKernon and Lee Tichenor Goff, and for a sale of the property to satisfy the judgment. On January 23, 1933, the defendants, Goff and Mapels, each filed a voluntary petition in bankruptcy in the United States District Court for the Western District of Kentucky. Thereafter, in October, 1933, an amended petition was filed in the case at bar in which the trustee in bankruptcy of both Goff and Mapels joined with the plaintiff in asking that the mortgages be set aside. With the amended petition, there was filed as an exhibit an order of the referee in bankruptcy authorizing the trustee to be substituted as a party plaintiff in this suit. However, the case seems to have been practiced as though there were thereafter two plaintiffs instead of one. In February, 1934, an answer was filed deny-

ing the allegations and conclusions of the petition as amended. The parties commenced taking proof in March, 1934, the defendants taking their proof first, and completed the taking of proof on the 18th of May, 1934. On June 6, 1934, the plaintiffs filed a second amended petition setting out that the attacked mortgages were insufficient to create a lien on the personal property referred to therein because of the inadequacy of the description. The defendants objected to the filing of this second amended petition after all the proof had been taken, and the chancellor in his final judgment expressly declined to consider the matters there presented. On June 13, 1934, a third amended petition undertaking to bring in the attorneys for the defendants as parties to the suit was tendered, but the court refused to permit it to be filed. A fourth amended petition was tendered after the judgment in the case had been filed, but before it was actually entered, and the court refused to permit the filing of this amended petition also. Whether the court should have permitted the filing of the numerous amended petitions presented after the proof in the case was all taken, changing the issues or bringing in new parties, was plainly a matter within its discretion, and its refusal to permit the filing of the pleadings under the circumstances presented in this case will not be disturbed on appeal. Rassenfoss v. Dicter, 257 Ky. 356, 78 S. W. (2d) 25; Speer v. Hall, 196 Ky. 597, 245 S. W. 282; Foxwell v. Justice, 191 Ky. 749, 231 S. W. 509. We may eliminate from consideration, therefore, the various matters presented in the second, third, and fourth amended petitions.

The questions remaining relate solely to whether or not the mortgages to Lee Tichenor Goff and to William F. McKernon are void under section 1906 of the Kentucky Statutes because made with the intent to hinder, delay, or defraud creditors of the mortgagor. Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285. The circumstances surrounding the transactions point inevitably to the conclusion that the defendant V. W. Goff set out with a fixed scheme to hinder, delay, and defraud the appellant Tracy Tichenor of the fruits of his judgment. It is true that Goff categorically denies any such intention or scheme, but unless we are to say that fraud can never be proved in the absence of a confession, it is difficult to see how circumstantial evidence

could more strongly indicate the fact of an intention than do the incidents surrounding the transactions here involved. Both mortgages were executed on the same day, just a week after the finding of the verdict in favor of appellant. Both were made to relatives, and one of them, the one to William F. McKernon, to a mortgagee who, it is now claimed, was an imbecile and incompetent to transact any business. It is true that the defendants proved that $1,000 was actually advanced on each mortgage. The transactions were "most iniquitously legal." Adams Express Co. v. Commonwealth, 124 Ky. 160, 92 S. W. 932, 935, 29 Ky. Law Rep. 224, 5 L. R. A. (N. S.) 630. The major part of the proceeds of one mortgage was used to prefer the attorneys who had represented Goff in the damage suit, while the remainder was used in putting Goff and Mapels through bankruptcy. The proceeds of the other mortgage were turned over to the dummy corporation in whose name Goff and Mapels were then operating the mine, and it is now claimed that this money was spent in wages and repairs. The wife of V. W. Goff had control of the property of her incompetent brother, although he had never been declared incompetent and had no committee at that time, and it was she who advanced William F. McKernon's $1,000 on the mortgage made to him. It was shown that McKernon had acquired this $1,000 by inheritance, and it seems probable that he knew nothing whatever about the transaction here involved. Section 1906 of the Statutes expressly excepts from condemnation the title of a purchaser for valuable consideration unless he had notice of the fraudulent intent of his immediate grantor. Accepting it as established, therefore, that the conveyances here involved were made with an intent to delay, hinder, or defraud the creditors of Goff, it must still be shown that the mortgagees, having paid value, had notice of the fraud. Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285; Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050. It is argued that the fact of Goff's insolvency, together with the knowledge of the judgment against him, was sufficient to put the mortgagees on notice of his intent to defraud. The record discloses, however, that William F. McKernon was not capable of forming an intent and could not, therefore, be charged with knowledge of these facts. Indeed, the

proof indicates that the $1,000 belonging to McKernon was simply converted by Goff through the agency of his wife. Furthermore, since the major portion of the proceeds of the McKernon loan is shown to have been devoted to the making of a voidable preference which might have been reached for the benefit of general creditors in bankruptcy by a proper proceeding, with the result that the estate of the bankrupt would not have been materially depleted by the transaction, we think, under the circumstances, that the chancellor did not err in sustaining the validity of the McKernon mortgage.

A more serious question is presented in connection with the mortgage to Lee Tichenor Goff. The record indicates that a portion of the property covered by this mortgage has been set aside to Goff in the bankruptcy proceeding, during the pendency of this suit, as a homestead exemption. To the extent that the mortgage includes exempt property, it is, of course, not vulnerable to the attack here asserted. Kennoy v. Cannon, 238 Ky. 700, 38 S. W. (2d) 672; Patrick v. Daniel, 238 Ky. 172, 37 S. W. (2d) 71; Reynolds v. Sizemore, 233 Ky. 122, 25 S. W. (2d) 48. Obviously, nothing could be gained, so far as appellant trustee in bankruptcy is concerned, or so far as the general creditors whom he represents are concerned, by setting aside this mortgage to the extent that it covers exempt property, exempted in the very proceeding in which the trustee was appointed. On the other hand, to the extent that this mortgage may include property not set aside to the bankrupt as a homestead, we think it is patently fraudulent as to existing creditors, and, to the extent indicated, should have been set aside. There is nothing in the record to indicate that the mortgagee, Lee Tichenor Goff, is not a person of ordinary intelligence, although it is argued that she is not an experienced business woman, and that she had confidence in her brother-in-law and simply made him a loan without taking into consideration the surrounding circumstances. It is also argued that the pleadings do not support a charge of participation in the fraud by the mortgagee. We think the petition is sufficiently broad to support the charge, but, whether she actually was a party to the fraud or not, she certainly had notice, within the meaning of the statute, of the fraudulent intent of her mortgagor. Not only did she know of the existence of the judgment

against Goff, she was actually a witness at the trial where the judgment was obtained. Within a week after the trial and verdict, negotiations for a loan were commenced and completed. The circumstances were certainly enough to place the burden on her of showing that she had no notice of the fraud. This burden she has not sustained. She admits knowledge of facts reasonably calculated to put her on notice. To the extent, therefore, that her mortgage may cover other than exempt property, it must be set aside.

The record does not show what property has been set aside as a homestead in the bankruptcy proceeding, although there is a plea and claim of homestead in this case in the two-thirds undivided interest of the defendant Goff in the 38-acre tract. Of course, he is not entitled to two homestead exemptions, and he should be allowed the same exemption here as that set apart for him in bankruptcy.

Appellants likewise complain of the action of the chancellor in the denial of the right to cross-examine the incompetent, William F. McKernon, as if on cross-examination. At the time when the motion was made to require McKernon to submit to a cross-examination by the plaintiffs, the proof had all been taken and very clearly showed his incompetency. Under the circumstances, therefore, we think the matter was one within the discretion of the chancellor, and we are not prepared to say that he overstepped the bounds of that discretion.

Judgment affirmed as to William F. McKernon, and reversed as against the other appellees, for proceedings consistent herewith.