Preston P. NUNNELLEY, M.D. and Lucille Nunnelly, Appellants,

v.

Ansel HERNDON, Appellee.

No. 84–CA–1060–MR.

Court of Appeals of Kentucky.

Feb. 8, 1985.

As Modified March 8, 1985.

David T. Enlow, Steven F. Vicroy, Murphy, King, Enlow & Dunn, Lexington, for appellants.

James G. Sheehan, Jr., Sheehan, Barnett & Hays, P.S.C., Danville, for appellee.

Before COMBS, MILLER and WHITE, JJ.

COMBS, Judge.

The issue on appeal is whether the entry of summary judgment against appellants for the unpaid balance of the note properly disposed of their claim of discharge under KRS 355.3–606(1)(a).

James Nunnelly and his uncle by marriage, Brodie Carmen, were employed in the retail sales of automobiles. They decided to go into business together by purchasing a dealership in Central Kentucky. In surveying the area for possible dealerships, they were on occasion joined by James' brother, Preston. In fact, Preston was actively involved in negotiations concerning the purchase of a Cadillac dealership. After examining their prospects, James and Brodie decided to purchase a Ford dealership from Ansel Herndon.

Part of the purchase transaction was a note payable to Herndon for $60,000.00. The note was to be paid in ten years by paying 120 monthly installments. Herndon would not loan the money unless Preston and his wife joined with James and Brodie and their wives as makers on the note. Following the execution of the note, Herndon wrote a check in the amount of the note payable to James, Brodie and Preston. Each endorsed the check and returned it to Herndon.

The dealership had a difficult start, apparently suffering from the effects of the last recession. James, who had bought Brodie's interest, was forced to close the business. Before the end, Herndon accepted payments of interest only from James.

After James filed bankruptcy and Brodie died, Herndon filed this action against Preston and his wife. They plead as an affirmative defense that they were sureties and their obligation had been discharged because Herndon suspended his right to enforce the note against the principal makers. They also initiated a third-party action against Brodie's estate and his widow. Summary judgment was entered against Preston and his wife for the remaining balance due on the note. The judgment was made final by including CR 54.02 recitations. Preston and his wife appeal.

The appellants argue that they were accommodation parties, and therefore entitled to the defense found in KRS 355.3–606(1)(a). Relevant portions of that section are as follows:

The holder discharges any party to the instrument to the extent that without such party's consent the holder (a) without express reservation of rights, releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instru-

ment or collateral or otherwise discharges such person, ...

■ To be entitled to this defense, the appellants must show that they are accommodation parties. An accommodation party is defined in KRS 355.3–415(1) as "... one who signs the instrument in any capacity for the purpose of lending his name to another party to it." The evidence presented to this court is that Preston and his wife signed the note because Herndon would not sell the dealership to James and Brodie otherwise. A further factor to consider is whether Preston and his wife received any benefit from the proceeds of the note. *See* Annot., 90 A.L.R.3d 342 (1979).

Benefits from the proceeds of the note were used by James and Brodie to buy the dealership which they ran as a corporation. Neither Preston or his wife were a stockholder, director or officer of the corporation, and neither received any salary or commission from the corporation. However, Herndon argues that the appellants received benefits evidenced by Preston's endorsement of the check and their use of demonstrators.

Preston's endorsement of the check is irrelevant. It does show that Preston temporarily received the proceeds, but does not show that he received any benefit from those proceeds.

Nor does the appellants' use of automobiles show any benefit from the proceeds of the note. This use was related to appellants' effort to promote the dealership. Through appellants' use of these demonstrators, the dealership was able to sell numerous automobiles. This benefit is related to transactions between the dealership and appellants and is not related to the transaction at issue.

The second issue is whether Herndon knew of the appellants' status as sureties. The record before this court is that Herndon demanded appellants' signatures before he would sell to James and Brodie. Nothing in the record contradicts this proof.

■ The third issue is whether Herndon suspended his right to enforce the note. Clearly acceptance of partial or interest-only payments is a suspension of enforcement of the note.

■ The last issue is whether the appellants consented to the suspension. There is nothing in the note or the record which would indicate they did. Herndon argues that appellants agreed to future suspensions because the holder had a discretionary right to accelerate. We disagree. The right to accelerate provided the holder with the ability to enforce future payments upon a present default. This right does not include a surety's consent to non-enforcement of a present default of payments.

■ The appellants are entitled to the KRS 355.3–606(1)(a) defense as a matter of law. However, Herndon is entitled to summary judgment. This opinion effects only the amount of that judgment because the appellants are only discharged "... to the extent ..." that the enforcement of the note was suspended. KRS 355.3–606. The appellants are discharged from any amount due on the note prior to the time that Herndon sought enforcement against them.

The judgment of the Lincoln Circuit Court is reversed and remanded for proceedings consistent with this opinion.

All concur.